Sobieralski *v.* Schwotzer, Appellant.

Argued April 27, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Henry A. Jones,* for appellant.

*Francis A. Wolf,* with him *Leo A. Nunnink,* for appellee.

OPINION BY RHODES, J., July 16, 1943:

This trespass action arises from the collision of two trucks at the intersection of Sarah and Twenty-second Streets on the South Side of the City of Pittsburgh. The trucks were being operated by employees of the owners, and it is conceded that they were being operated in furtherance of the business of the owners when the accident occurred. Plaintiff obtained a verdict and judgment; defendant has appealed and assigns as error the refusal of his motion for judgment n.o.v.

Viewing the facts and the inferences to be deduced therefrom in the light most favorable to plaintiff, we agree with the court below that the jury was justified in rendering a verdict for the plaintiff.

The essential facts may be stated briefly and simply. Sarah and Twenty-second Streets intersect at right angles. Sarah Street runs east and west and Twenty-second Street north and south. The cartway of each street was about 28 feet, with sidewalks on each side about 10 feet wide, and accommodated four lines of traffic. An electric traffic signal on a concrete foundation was erected in the middle of Sarah Street at the east side of Twenty-second Street. This narrowed Sarah Street into a two-lane street at the east side of Twenty-second Street. Plaintiff's truck was being driven north on Twenty-second Street and defendant's truck was going east on Sarah Street. Both trucks were near the right curbs of the respective streets. As the driver of plaintiff's truck approached the intersection he reduced its speed to about 15 miles per hour,

and, having the green light and observing defendant's truck slightly west of the intersection and slowing down in face of the red light, he entered the intersection. When plaintiff's truck was thus committed to the intersection defendant's truck—ignoring the red signal—speeded through the intersection, swerved to its left and struck the traffic signal. At this point plaintiff's truck came in contact with the right side of defendant's truck after plaintiff's driver made an ineffective attempt to avoid the collision by turning toward the right. The day (July 5, 1941) was clear.

Defendant's argument to the effect that he is not liable for the ensuing damages to plaintiff's truck is based on unwarranted assumptions. In his behalf it is contended that defendant's truck first entered the intersection—although conceded that it must be assumed that it continued through the intersection on the red light—, and that plaintiff's truck was driven into that of the defendant, thereby causing his harm. It is unnecessary to discuss in detail the evidence. We need merely say that there was sufficient testimony from which the jury could infer that plaintiff's truck was first committed to the intersection, that defendant's truck was first at the point of collision in the intersection due to its increased speed and its driver's negligence, and that the negligent operation of the latter made the contact inevitable.

The evidence clearly shows defendant's negligence, and any question of the contributory negligence of the driver of plaintiff's truck was for the jury. A police officer testified that at the scene of the accident defendant's driver admitted that he went through the red light, and that he was "dreaming"—"wasn't paying any attention." This driver's own testimony also indicates that he failed to observe the traffic conditions in the intersection, and was oblivious to his surroundings. Plaintiff's truck had the right of way. It may also be

noted that plaintiff's truck as it entered the intersection had only a few feet to travel before it was beyond the line of travel of defendant's truck, while the latter, to meet with plaintiff's truck, was obliged to proceed some distance in disregard of plaintiff's superior right. Notwithstanding plaintiff's truck had the right of way, we think the jury could very well have found from the evidence that in entering the intersection its driver continued to look until his view of the intersecting street and of the approach of defendant's truck was sufficient to assure him under the circumstances that he could clear the intersection in advance of the approaching vehicle.

An applicable statement is found in *Roth et al.* v. *Hurd,* 140 Pa. Superior Ct. 401, at page 405, 13 A. 2d 891, at page 893, where we said: "The jury could find that driver plaintiff reached the intersection first, and, under the circumstances was justified in proceeding on the assumption that defendant, approaching the intersection at 20 to 25 miles an hour, would recognize her superior right to the intersection, observe the law, and stop. Adams v. Gardiner, 306 Pa. 576, 581, 582, 160 A. 589; Gardner v. Kline, 137 Pa. Superior Ct. 505, 510, 9 A. 2d 487; Rankin v. Boyle, 328 Pa. 284, 287, 195 A. 36. She was not required to anticipate and guard against the want of ordinary care on the part of defendant (Probka v. Polis, 124 Pa. Superior Ct. 129, 188 A. 393), although, having the right of way, she was still bound to use proper care under the circumstances to avoid collision with an approaching vehicle (Byrne et al. v. Schultz et al., 306 Pa. 427, 432, 160 A. 125). 'But in determining whether reasonable care was exercised it must be remembered that a driver having the right of way may take into consideration, as a factor upon which, with others, to base his conduct, the duty of other drivers to obey the law and the probability that they will do so: [cases cited].' "

Judgment is affirmed.