John R. WINN, Appellant,

v.

GULF, MOBILE & OHIO RAILROAD COMPANY, a Corporation, Respondent.

No. 44359.

Supreme Court of Missouri.
Division No. 1.

Nov. 14, 1955.

Motion for Rehearing or to Transfer to Court en Banc Denied Dec. 12, 1955.

456

Rexford H. Caruthers, Edward E. Murphy, Jr., William R. Kirby, St. Louis, for appellant.

Robert C. Ely, Ely & Ely, St. Louis, for respondent.

COIL, Commissioner.

John R. Winn sought $150,000 damages from respondent railroad under the F.E.L.A. for alleged personal injuries. The parties will be referred to as they were designated in the trial court. The verdict was for defendant and Winn has appealed.

Plaintiff's evidence tended to show that on September 26, 1950, Winn was the swing brakeman on defendant's local freight running westwardly from Roodhouse, Illinois, to Slater, Missouri. After passing Armstrong, Missouri, Winn left the engine cab and proceeded along a catwalk to steps which led downwardly from the north side of the catwalk at the rear of the Diesel unit. He sat on the step just below the catwalk and smoked a cigarette. He was then facing north and was holding to the grab iron or step railing to his left. He held an electric lantern in his right hand. When he wished to arise, he grasped the other railing to his right, arose, turned so he faced south, and, at the same time, transferred his left hand to the east railing and his right hand to the west railing. As he faced southwardly and was holding as indicated, the train gave "a sudden, unusual and violent lurch" causing plaintiff to be thrown to the ground to the north of the tracks. The crew later found Winn lying on his left side five or six feet north of the north rail of the track.

Because of the issues involved on this appeal, it is unnecessary to make a more detailed statement of the evidence.

Plaintiff contends the trial court erred in giving instructions and in excluding evidence. Plaintiff submitted his case under the res ipsa loquitur doctrine. He offered instruction A. The trial court refused instruction A and, over plaintiff's objection, modified that instruction by the insertion of a phrase to be hereinafter discussed, and gave instruction 1 (modified instruction A) over both plaintiff's and defendant's objections.

That instruction, after setting out the admitted facts that plaintiff was defendant's employee engaged in interstate commerce at the time in question, proceeded to hypothesize defendant's control and operation of the train by employees other than plaintiff, the sudden, unusual, and violent lurch which caused plaintiff to be thrown from the engine to the ground and to be injured, and proceeded: "then you are instructed that such facts (if you believe them to be true) are sufficient circumstantial evidence to warrant a finding by you that the defendant was negligent, and you may so find, *if you believe that you should,* unless you find and believe from other facts and circumstances in evidence that the occurrence was not due to the defendant's negligence, and if you do find that the defendant was negligent and that such negligence in whole or in part caused injury to John R. Winn, then your verdict must be in his favor and against the defendant." The italicized phrase in the above-quoted instruction was inserted by the trial court.

Plaintiff contends that the instruction, by reason of the italicized phrase, was reversibly erroneous because it directed the jury to follow some "personal belief of their own choosing in reaching a verdict in this case, rather than finding the facts and applying the law as set out in" the refused instruction. Defendant, although not responsible for the insertion of the phrase in question, contends that the only effect of the phrase was to "caution * * * the jury that they were not *required* to find negligence even though they found all of the facts outlined in the instruction but instead were *permitted* to find negligence" and that the phrase thus performed the

function of a cautionary instruction which it was within the discretion of the court to give. Defendant's position is amplified by this quotation from its brief: "We believe that the inclusion of the phrase, 'if you believe that you should' makes the legal intent of the instruction more clear to the jury by directing their attention to the fact that they are not required to find negligence but are only permitted to find it if their reason and common sense lead them to believe that they should find negligence, and, of course, it should be the ultimate intent of any instruction that the jury understand clearly what they should do."

It is true, as defendant contends, that the facts of the occurrence which, when adduced in evidence, give rise to the application of the res ipsa loquitur principle *warrant* but do not *compel* a finding of negligence, and that the facts and circumstances of the occurrence, even if sufficient as a matter of law to *warrant* a finding of negligence, are nevertheless to be weighed as evidence by the jury to determine whether such facts and circumstances are sufficient to cause the jury to draw the inference of negligence. The facts and circumstances may be rebutted by defendant or defendant may adduce no evidence. In either event, the jury may or may not find that the occurrence took place because of defendant's negligence, depending upon the jury's finding as to whether the facts and circumstances of the occurrence were such as to cause it to find from all the evidence that defendant was negligent.

But we cannot agree with defendant that the inserted phrase performs the function, or, at least, only the function, of emphasizing to the jury, or cautioning the jury, that the inference of negligence it may draw from the facts and circumstances of the occurrence is a permissible inference rather than a mandatory one. As we see it, the instruction, in effect, tells the jury, before you may find defendant negligent, you must find or believe these three things: (1) you must find the hypothesized facts to be true; (2) you must find that those facts, even though true, are sufficient to justify a finding that defendant was negli-

gent, and (3) you must *believe* that you should find defendant negligent. It seems apparent that number (3) above need not be true in the sense in which it is set forth and probably would be understood, viz., as a separate independent standard or prerequisite to finding a verdict for plaintiff. This must be true because a verdict for plaintiff was not dependent upon any belief of the jury except a belief or finding that was induced or made under the evidence in the case based upon some stated standard by which the jury could arrive at such a finding or belief. It is, of course, true that any jury in any negligence case must as a theoretical proposition *believe* that it should find defendant negligent before returning a verdict for plaintiff. But the belief in that sense is a belief in the nature of a conclusion based upon its findings under the evidence and the court's instructions and not a belief the jury may independently entertain apart from the law as declared in the instructions and apart from its findings as set forth in the other portions of the instruction.

It is our opinion that the instruction permitted the jury to find for defendant even though the jurors had found the hypothesized facts to be true and had drawn the permissible inference of negligence therefrom. This because their findings in these respects are made valid or invalid depending upon the ultimate test of whether the jurors, independently or personally, and irrespective of their findings in the respects noted, believed that they *should* find defendant negligent.

It is desirable that two other of plaintiff's contentions on this appeal be decided because it is likely that the situations giving rise to them will recur in the event of another trial.

Plaintiff claims that defendant's instruction 5 was erroneous for the reason, inter alia, that there was no evidence to support it. Defendant's sole cause instruction 5 hypothesized plaintiff's alleged negligence in failing to "hold on to anything" as he stood and turned as the sole proximate cause of his injury. As noted, plaintiff's

458

testimony was to the effect that he was at the time holding on to the railings at the sides of the steps. Defendant's evidence in this respect was a prior written statement allegedly made by plaintiff to defendant's claim agent, offered and admitted in evidence as Exhibit 1, in which plaintiff purportedly said, "I recall that as I raised up and started to turn I was not holding onto anything but as I started to fall made a grab, struck something with the ends of my fingers on left hand but did not catch hold of anything." Plaintiff contends that, under the circumstances shown in evidence, the purported statement was not evidence that plaintiff had in fact made the admission and thus not substantial probative evidence of the fact (not holding on) hypothesized in the instruction.

An examination of the record shows that a jury reasonably could have found that the facts pertaining to the prior statement were these: that plaintiff recalled having given a statement concerning the accident during the time he was at home and confined to bed; that his signature appeared at the bottom of each of the offered statement's four pages (front and back of each of two sheets), and plaintiff recalled having signed those pages; that preceding his signature at the end of the statement, the following appeared in plaintiff's handwriting: "I have read this statement of two sheets and it is correct"; that plaintiff did not recall having so written; that plaintiff denied (in the instant trial) that he had read the statement prior to signing it, and stated that the reason he did not read it was that he did not have his glasses at the time and that his suggestion that his wife be called to read the statement to him was rejected by the claim agent as unnecessary; that plaintiff denied that he had told the claim agent that he was not holding to anything at the time he arose and turned, that any such statement was contrary to the fact, and, in effect, that he (plaintiff) did not know whether the alleged admission was a part of the statement when he signed it. The person who was defendant's agent at the time plaintiff's statement was taken was present in the courtroom but was not called to testify as to whether plaintiff did in fact make the alleged admission.

Plaintiff asserts that the exact question here presented is one of first impression in this state. And, indeed, we find no case directly in point. Defendant contends that the controlling principles are well established even though the exact fact situation may not have been heretofore involved in an adjudicated case in this state. Be that as it may, plaintiff says that "The rule of law contended for by plaintiff is a fair and simple one, namely, that whenever a party to litigation attempts to use as substantive evidence a contradictory statement obtained prior to trial by one of its representatives, the body of which contains a purported admission not in the writing of the claimant, and the person against whom the statement is being used denies making the admission and denies reading the statement before signing or otherwise approving of its accuracy, then before the statement can be treated as substantive evidence its accuracy and authenticity must be established by proper proof such as the person transcribing it or some other competent witness. Anything less would permit evidence obtained under doubtful circumstances to enter into judicial consideration without the searching test of cross-examination."

Plaintiff places chief reliance upon the case of Moore v. Krejci, 139 Neb. 562, 297 N.W. 913, 916. That case is on all fours with the facts of the instant case. There, a typewritten exhibit, which the evidence showed purported to be a statement by the plaintiff made to defendant's agent, contained the words at the end thereof: " 'I have read this and it is true' " in plaintiff's handwriting and plaintiff's signature thereafter. Plaintiff testified that he remembered talking to the agent, that he did not in fact read the statement because he assumed the agent had recorded what plaintiff had told him, and plaintiff denied the truth of the statement offered. No attempt was made to call the person to whom the purported statement was made, nor was any explanation made of the failure to do so. The Nebraska court relied upon the cases of Seckinger v. Economy Laundry,

Inc., 133 Pa.Super. 414, 3 A.2d 46, 47, and Altieri v. Public Service R. Co., 103 N.J.L. 351, 135 A. 786, 787. The Nebraska court quoted from the Seckinger case: " 'The defendant, at the trial of the case, sought to offer in evidence a statement alleged to have been given by the plaintiff to his insurance carrier. The plaintiff admitted that the signature on the statement was his own, but stated that the facts set forth in the same were not as given by him to the adjuster who called on him. The defendant made no attempt to call the insurance adjuster who took the statement, to testify as to its correctness. The court sustained the objection to its admission. We see no error in this as the ground had not been laid for its admission, in view of the denial by plaintiff of its correctness.' " And from the Altieri case: " 'In this situation, we are of opinion that the exclusion of the paper was proper. If the defendant had desired to impeach the testimony of the witness while on the stand, it should have called the party who wrote the statement, or someone else having knowledge of the facts, to testify that it contained a true account of what the witness had then said. In the absence of such proof, the statement was not evidential for the purpose of impeaching the credit of the witness.' "

The Nebraska court then held: "Where the record shows, as it does in this case, that the plaintiff signed a statement typewritten presumably by an agent of the defendants and it appears that upon it being shown to the plaintiff he testified that he did not read it, could not read it and did not know what was written in the statement, this statement is inadmissible without further foundation. Ordinarily, the proper foundation for the admission of such a statement must be made by calling the person who procured the statement and establishing by him that it was correctly typed or correctly read to or by the plaintiff and contains the statements made by the plaintiff. We hold that exhibit No. 6 offered by the defendants was properly excluded by the trial court on the ground of the insufficiency of the foundation laid for its introduction. In this connection see: Curtis v.

Ficken, 52 Idaho 426, 16 P.2d 977; Belskis v. Dering Coal Co., 246 Ill. 62, 92 N.E. 575, 20 Ann.Cas. 388; Wisniewski v. New York Central R. Co., 228 App.Div. 27, 238 N.Y.S. 429."

While apparently the courts in the three cases cited were dealing with the question of the admissibility of an exhibit for the purpose of impeaching the credibility of the plaintiff, and while in the instant case we are concerned solely with the question of whether plaintiff's admission against interest contained in the offered statement constituted evidence of probative value of the facts contained in the alleged admission, still we are unable to distinguish Moore v. Krejci, supra, and the two cases relied upon, from the instant case. We are unable, however, to follow those cases as decisive of the exact questions there or here presented.

In our attempt to analyze the exact question presented, we should make it clear that, as heretofore noted, there is no dispute between the parties to this litigation and plaintiff concedes that the statement offered and received in evidence did in fact contain an admission against the interest of plaintiff and that, if there was evidence tending to show that the admission was in fact made by plaintiff, such admission was admissible as probative evidence of the facts contained in the admission. Foster v. Aines Farm Dairy Co., Mo., 263 S.W.2d 421, 427 [7–10]. Consequently, it appears that the only pertinent question is whether there was sufficient evidence from which a jury reasonably could find that the admission contained in the statement was in fact made by plaintiff. True, plaintiff denied that he made the admission and if that were the only evidence in the case on that subject, then clearly the alleged admission against interest would not have been admissible. And it is also true that ordinarily where an agent, who has taken a purported statement containing an admission, the making of which plaintiff has denied, is available, it is the usual practice to adduce the agent as a witness to testify whether the admission contained in the statement was in fact made by plaintiff at the time the

statement was taken. But it does not follow in every case that, solely because the testimony of the one who took the statement is not adduced, there may not be other sufficient evidence, direct or circumstantial, from which the jury may find that the admission was in fact made. And we think that there was in the instant case sufficient circumstantial evidence from which the jury reasonably could find that plaintiff did in fact make the admission contained in the statement.

Our above conclusion is based upon a consideration of these facts and circumstances. The physical appearance of the statement was such that it showed on its face that it was (except for the signatures and the "I have read" statement) in the longhand writing of one person, and it showed that plaintiff's signature at the bottom of each page was immediately below that writing, i. e., there were no blank spaces left between the writing and the signature which could have been filled in at a later time. As has been noted, plaintiff admitted that it was his signature at the bottom of each page of the statement, and that it was his signature at the end of the statement, and the jury could have found that plaintiff admitted that the writing appearing immediately above his signature at the end of the statement was in plaintiff's own handwriting and was: "I have read this statement of two sheets and it is correct." Plaintiff did not testify that the portion of the statement containing the admission against interest was *not* a part of the statement at the time he signed it, but testified only, in effect, that he did not know whether the admission was a part of the statement at the time he signed it.

From all the foregoing, the jury reasonably could find that the statement was in the same form and condition at the time it was offered in evidence as it was at the time plaintiff signed it and reasonably could infer and find from that fact and from the further fact that plaintiff wrote that he had read the statement and that it was correct, that plaintiff had in fact read the statement prior to the time he signed it, that it then contained the admission against interest, and that plaintiff, therefore, had in fact made the admission against interest.

We hold, therefore, that, under the facts of the instant case, there was sufficient evidence from which the jury reasonably could find that the admission against interest contained in the statement was in fact made by plaintiff. That being true, it would appear that all other matters relating to the circumstances under which the statement was signed went to its weight and to the weight of the admission as evidence and did not affect its admissibility. (We may observe parenthetically that it would appear, from a practical standpoint, that the failure of defendant to have adduced its former agent, who was then sitting in the courtroom, to testify as to his knowledge concerning the fact of whether plaintiff had made the admission was of great advantage jury-wise to the plaintiff.)

We do not have a situation comparable to that in Lantz v. Dortman, 324 Ill.App. 564, 58 N.E.2d 922, also cited by plaintiff, wherein defendant testified that a written statement offered at the trial, which he had purportedly made to plaintiff's counsel, was in fact a blank piece of paper at the time he signed it. Under those facts, we think the court correctly held that there was no evidence tending to prove that the statement, when signed, was in the same condition as when it was offered in evidence. Nor do we have a fact situation in which plaintiff admits having signed a certain statement but testifies positively that at the time he signed the offered statement a certain sentence contained therein at the time offered was not there, and where the physical appearance of the statement tends to show that the sentence containing the alleged admission has been interpolated. Those and other possible fact situations present different questions than the one here ruled.

We rule herein only the exact facts of the instant case. A fact situation wherein the physical appearance of the statement and plaintiff's testimony concerning it are such that the jury reasonably may find that the offered statement was in the same condition at the time signed as at the time

offered, and wherein the jury may further infer and find that plaintiff did in fact read the statement as he had written that he had, and thus reasonably conclude that plaintiff did in fact make the admission contained in the statement.

On cross-examination of defendant's engineer, plaintiff sought to elicit from him expert opinions as to whether or not a sideway movement of the engine, sufficient to cause a man, who was standing in the same position and who was holding in the same manner as plaintiff said he was standing and holding, to be thrown from the engine, would be an "unusual lurch," and, conversely, whether the *"usual* swaying" of an engine would be sufficient to cause a man, standing and holding as plaintiff said he was, to be thrown off the engine.

We think the trial court properly sustained objections to both these questions for at least these two reasons. First, neither of the questions called for an opinion which would have materially assisted the jury in reaching its conclusion as to whether the engine did make an unusual lurch. This, because the jury could as well reach a conclusion in that respect from the facts in evidence, as with the assistance of an expert opinion. Cole v. Uhlmann Grain Co., 340 Mo. 277, 296, 100 S.W.2d 311, 322. Second, without any evidence of the degree of the firmness of the grip with which plaintiff was holding on, and no hypothesis of such contained in the hypothetical questions put to the engineer, any answer would of necessity have been based upon guess and conjecture.

Plaintiff's other contentions need not be ruled. They are further attacks upon instruction 5 and a contention that instruction 4 was erroneous. In the event of another trial, defendant will undoubtedly wish to consider redrafting those instructions in the light of the criticisms of them made by plaintiff.

For the reason that instruction 1 was prejudicially erroneous in the respect heretofore ruled, the judgment is reversed and the case is remanded for a new trial.

VAN OSDOL and HOLMAN, CC., concur in result.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

HOLLINGSWORTH, J., concurs.

HYDE, J., concurs in result and adopts the memorandum of VAN OSDOL, C., as his concurring opinion.

DALTON, P. J., and WESTHUES, J., concur in result and in separate concurring opinion of HYDE, J.

HYDE, Judge.

I agree in the result and adopt as my concurring opinion the memorandum of VAN OSDOL, C., as follows:

■ "I agree with Judge Coil's opinion in holding Instruction 1 (modified Instruction A) erroneous; and I agree that the written statement which admittedly bore plaintiff's signature at the bottom thereof was admissible and was substantial evidence supporting a submission of the fact that plaintiff did not 'hold on.' But I do not agree that any further showing than the identification of a party's signature to the statement was necessary in order to show, prima facie, its execution and authenticity, and consequent admissibility as an admission. Vol. VII, Wigmore on Evidence, 3 Ed., Sec. 2134.

■■ I believe the fact alone that plaintiff testified the signature at the bottom of the statement was his own was a sufficient prima facie showing of the execution and authenticity of the statement to render it admissible. On the question of admissibility—although proper, testimony of defendant's agent (who took plaintiff's written statement) tending to show the statement as written was executed by plaintiff, was not necessary, in view of the fact that

plaintiff identified his signature thereto. I think that, on the question of admissibility of a written statement as an admission, the party whose signature the statement admittedly bears, may not destroy the effect of the prima facie showing so as to render the statement inadmissible by testifying that he had not read the statement before signing, or by testifying he had not made the admission as written, or by otherwise testifying in disapproval of the accuracy of the statement, or by denying that the statement shown him is in fact the instrument he signed—such testimony in my opinion should go only to the weight of the statement as an admission, and should not affect the admissibility of the statement."

DALTON, P. J., and WESTHUES, J., concur.